UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/14/22
```

———————————————————————————

Robinson Feliz,

                    Plaintiff,

        —v—

City of New York, *et al.*,

                    Defendants.

———————————————————————————

19-cv-6305 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Plaintiff Robinson Feliz alleges that he was stopped, arrested, searched, and detained in violation of the Constitution and New York state law. He named as Defendants the City of New York and individuals Alex Tegan, Ronnie Rodriguez, and Michael Grover, who are officers employed by the New York Police Department. Defendants moved to dismiss the amended complaint in its entirety. For the reasons that follow, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## I.    Background

For purposes of resolving Defendants' motion to dismiss, the Court accepts all well-pled facts in the amended complaint as true and draws all inferences in Feliz's favor. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). The following account is therefore taken from Feliz's factual allegations contained in the amended complaint.[1]

### A.  Factual background

---

[1] As explained below, the Court declines to consider the extrinsic materials submitted by the parties with the motion to dismiss aside from Feliz's notice of claim filed to the City and the District Attorney's decline-prosecution form.

1

On the night of May 15, 2018, Feliz was driving his car in the vicinity of 164th Street and Fort Washington Avenue in New York City.  Am. Compl. ¶ 19, Dkt. No. 38.  Officers Tegan, Rodriguez, and Grove stopped Feliz's car, stating that Feliz had made an unlawful right turn on a red traffic light.  *Id.* ¶¶ 21–23.[2]  Feliz denies that the light was red.  *Id.* ¶ 22.  After Feliz provided his license and registration, Defendants returned to a patrol car, apparently to verify Feliz's information.  *Id.* ¶¶ 24–25.  Defendants returned to Feliz's car and informed Feliz that his license was suspended.  *Id.* ¶¶ 26, 28.  Feliz responded that his license was not suspended and stated that he currently possessed documents to prove as much.  *Id.* ¶¶ 27, 29–30.  Defendants did not view these documents.  Instead, Defendants arrested Feliz for driving without a valid license and placed him in handcuffs.  *Id.* ¶¶ 28–32.

Feliz was transported to a police precinct where he was questioned by officers.  *Id.* ¶¶ 38–44.  During that questioning, Defendants allegedly "directed racially and ethnically discriminatory and derisive language toward plaintiff, namely insults and other derogatory remarks particular to individuals of Hispanic or Latino descent, national origin or ethnicity."  *Id.* ¶ 42.  The New York District Attorney's Office ultimately declined to prosecute Feliz and he was released from custody within 23 hours of his arrest without being arraigned or charged.  *Id.* ¶¶ 49–55.

Feliz further alleges that Defendants intentionally arrested Feliz without cause in order to elicit information about other, unrelated crimes of which Feliz had no knowledge.  *Id.* ¶¶ 54, 57–62.  And, relying on a series of news articles, Feliz alleges that Defendants and other NYPD officers regularly arrest drivers of color without cause and that the NYPD does not adequately

---

[2] The amended complaint does not distinguish between which of the three individual officers named as Defendants took which of the following actions but instead alleges that all three officers took each action.

discipline officers that lie to justify arrests or when called as witnesses in court.  *Id.* ¶¶ 63–76.

Last, Feliz alleges that the personnel files for the individual Defendants will demonstrate a

pattern of unconstitutional actions.  *Id.* ¶¶ 77–78.

In total, Feliz raised 19 causes of action arising under federal and New York state and

municipal law, including First Amendment retaliation, unlawful search and seizure, false arrest

and imprisonment, assault and battery, malicious prosecution, malicious abuse of process, bias-

based profiling, violation of equal protection, conspiracy to interfere with civil rights, failure to

intervene to prevent unlawful conduct, negligent hiring and training by the City, and *Monell*

liability for an unlawful policy or practice by the City.  *Id.* ¶¶ 81–213.

### B.  Procedural history

Feliz filed this action on July 8, 2019.  Dkt. No. 1.  Prior to filing the initial complaint,

Feliz filed a written notice of claim to the New York City Office of the Comptroller, as required

by New York General Municipal Law § 50-e.  Am. Compl. ¶¶ 15–17.  The action was

subsequently referred to mediation pursuant to the Southern District of New York's Section 1983

Plan, Dkt. No. 10, and then stayed at the parties' request in light of the COVID-19 pandemic,

Dkt. No. 17.  Defendants on August 7, 2020, moved for judgment on the pleadings under Rule

12(c).  Dkt. No. 29.  Along with its briefing, Defendants provided footage from an officer's body

camera worn on the night of May 15, 2018.  Dkt. No. 28.  Feliz requested, and the Court granted,

leave to amend his complaint in light of Defendants' motion.  Dkt. Nos. 33–35.  Feliz filed his

amended complaint on September 24, 2020.  Dkt. No. 38.  Defendants filed a motion to dismiss

the entirety of Feliz's amended complaint under Rule 12(b)(6).  Dkt. No. 43; Defs. Br., Dkt. No.

45; Iheanachor Decl., Dkt. No. 44.[3]

---

[3] The Court later granted Defendant Grove's request to join in this motion after Grove was

In his opposition, Feliz both responded to Defendants' motion to dismiss and requested (1) that the Court grant Feliz summary judgment on his claims for false arrest, false imprisonment, and illegal search and seizure, and (2) award Feliz attorneys' fees and costs because Defendants' motion to dismiss is "frivolous."  Pl. Br. at 27, Dkt. No. 54; DePaolo Decl., Dkt. No. 55.  Defendants filed a reply.  Defs. Reply, Dkt. No. 63.

## II.   Legal standard

When considering a motion to dismiss for failure to state a claim, courts "construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true."  *York v. Ass'n of Bar of City of N.Y.,* 286 F.3d 122, 125 (2d Cir. 2002).  Federal Rule of Civil Procedure 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  To survive a Rule 12(b)(6) motion, a plaintiff must allege facts sufficient "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  The complaint's factual allegations must be sufficient to "nudge[ ]" the plaintiff's claims "from conceivable to plausible."  *Iqbal,* 556 U.S. at 680 (quoting *Twombly,* 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.

At the pleading stage, a court generally "must limit its analysis to the four corners of the complaint."  *Vassilatos v. Ceram Tech. Int'l*, Ltd., 92-cv-4574, 1993 WL 177780, at *5 (S.D.N.Y. May 19, 1993) (citing Kopec v. Coughlin, 922 F.2d 152, 154–55 (2d Cir. 1991)).  A court may, however, "consider 'documents attached to the complaint as an exhibit or

properly served.  Dkt. No. 69.

incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal alterations omitted) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)); *see also ACE Sec. Corp. Home Equity Loan Tr. v. DB Structured Prods.,* 5 F. Supp. 3d 543, 551 (S.D.N.Y. 2014) ("In addition to the allegations in the complaint itself, a court may consider documents attached as exhibits, incorporated by reference, or relied upon by the plaintiff in bringing suit, as well as any judicially noticeable matters."). With respect to the last category of materials, the Second Circuit has emphasized that the "plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration" thereof—"mere notice or possession is not enough." *Chambers*, 282 F.2d at 153.

A court may consider "material outside the complaint" only if it converts the motion to one for summary judgment, as opposed to a motion to dismiss. *Id.* at 152. Whether to convert a motion to dismiss into a motion for summary judgment is left to the sound discretion of the district court. *See Kouakou v. Fideliscare New York*, 920 F. Supp. 2d 391, 396 (S.D.N.Y. 2012). Rule 12(d) requires that the court or the moving party give "sufficient notice to an opposing party and an opportunity for that party to respond." *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995).

## III.    Discussion

Defendants seek to dismiss all 19 of Feliz's claims. In support of their motion, Defendants submitted three exhibits attached to the Iheanachor Declaration, including 20 minutes of footage from an officer's body camera, Iheanachor Decl., Ex. B ("the footage"), the New York District Attorney Office's decline-prosecution form, Ex. C, and Feliz's written notice

of claim filed to the New York City Comptroller's Office on August 10, 2018, Ex. D ("Notice of Claim").  Feliz also filed a transcript of Feliz's testimony regarding his claim given at a hearing pursuant to New York Municipal Law § 50-h.  DePaolo Decl., Ex. 1.  The Court will determine first which materials it considers in resolving Defendants' motion and then address the arguments for dismissal.

### A.  Materials considered by the Court

As explained, a document may be considered at the motion to dismiss stage if it is attached to the complaint, if the complaint incorporates it by reference, if the plaintiff relied on the document in bringing the suit, or if it is a document of which the Court may take judicial notice.  *Chambers*, 282 F.3d at 153; *ACE Sec.,* 5 F. Supp. 3d at 551.

The Court will therefore consider both Feliz's notice of claim and the District Attorney's decline-prosecution form because both are expressly referenced in the amended complaint.  Am. Compl. ¶¶ 15–17, 49, 133.  But under Rule 12(b)(6), the Court will not consider Feliz's testimony or the body camera footage submitted by Defendants.

As to Feliz's testimony, no party argues that it may be considered under Rule 12(b)(6)— it is not attached to, referenced in, or otherwise relied on in writing the amended complaint.  It is therefore not considered in the motion to dismiss.

Similarly, the body camera footage is not attached to, referenced in, or mentioned in the amended complaint.  *Benny v. City of Long Beach*, No. 20-CV-1908 (KAM), 2021 WL 4340789, at *8, *10 (E.D.N.Y. Sept. 23, 2021) (declining to consider surveillance footage in police-misconduct case even where complaint mentioned the footage existed).  Nor is there any indication that Feliz or his counsel relied on the footage in drafting the amended complaint as might justify consideration of the footage.  *See Santulli v. Moy*, No. 18-CV-122 (NGG), 2019

WL 3429081, at *2 (E.D.N.Y. July 30, 2019) (considering only allegations in the complaint

because there was no indication plaintiff relied on footage in police-misconduct case).

Defendants urge the Court to consider the footage because Feliz allegedly possessed it

when drafting the amended complaint,[4] Defs. Br. at 5 n.5, "it is integral to the pleadings and

defendants' affirmative defenses," and it "is an irrefutable depiction of the underlying incident,"

*id.* at 5 (citing *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)).  But "mere . . . possession is

not enough."  *Chambers*, 282 F.2d at 153.  Nor does the amended compliant rely to such a

degree on the contents of the footage as to render it "integral" to Feliz's claims.  *Santulli*, 2019

WL 3429081, at *2; *see also Ashley v. Gonzalez*, No. 19-CV-6282 (AJN), 2020 WL 7027501, at

*2 (S.D.N.Y. Nov. 30, 2020) ("Furthermore, there is no basis to conclude that these videos are

integral or essential to the Complaint.  Courts in this district have expressed skepticism at such

claims, emphasizing that extraneous videos documenting the events in question are not properly

considered on a motion to dismiss unless the plaintiff relied upon the videos when drafting the

complaint."); *Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 719–20 (S.D.N.Y. 2015)

(collecting cases); *Smith v. City of Greensboro*, No. 1:19-CV-386, 2020 WL 1452114, at *3

(M.D.N.C. Mar. 25, 2020) ("The factual allegations contained therein stand independent of the

video, and may conceivably be proven without it (for instance, via witness testimony).  Nor is

there any indication from Plaintiffs that they actively relied upon the video in crafting the

complaint.").

Under Federal Rule of Civil Procedure 12(d), the Court potentially could convert

Defendants' motion to dismiss into a motion for summary judgment and consider the footage in

---

[4] Feliz disputes that he was served this footage, though he was served two body camera
recordings earlier in the litigation.  Pl. Br. at 7.

resolving the converted motion.  *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").  But the "ultimate decision of whether to convert a Rule 12(b)(6) motion into a Rule 56 motion is discretionary."  *Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 358 (S.D.N.Y. 2016).  The Court will decline to convert the motion here.  Defendants at no point in their briefing requested the Court do so.  *See Rasmy v. Marriott Int'l, Inc.*, No. 16-CV-04865 (AJN), 2017 WL 773604, at *10 (S.D.N.Y. Feb. 24, 2017).  And the Court finds Feliz otherwise lacked adequate notice to present additional materials extrinsic to the complaint to properly address Defendants' footage.  *Ashley*, 2020 WL 7027501, at *2 (declining to convert a motion to dismiss to one for summary judgment to consider video footage); *see also Goldman v. Sol Goldman Invs., LLC*, --- F. Supp. 3d ---, No. 20-CV-06727 (AJN), 2021 WL 4198253, at *4 (S.D.N.Y. Sept. 14, 2021) ("Plaintiff has not yet had an opportunity [to] conduct discovery and present his own evidence.").

Therefore, the Court will evaluate Defendants' arguments without reference to the body camera footage.

### B.  False arrest

"To prove the elements of false arrest under New York law, plaintiff must show: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."  *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994).  "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest.'"  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (quoting *Bernard*, 25 F.3d at 102).

For present purposes, the elements of Feliz's state and federal false-arrest claims are identical. *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).

Defendants contest only the last element, arguing that Defendants had probable cause to arrest Feliz either for (a) driving with a suspended license or (b) driving without registration. Defs. Br. at 6–8. Alternatively, Defendants argue that it was not clearly established that Feliz's arrest was unconstitutional and that probable cause was at least arguable, entitling them to qualified immunity. *Id.* at 20–22.

The Court disagrees with these two arguments and therefore denies Defendants' motion to dismiss as to Feliz's false-arrest claims based on state and federal law.

### 1. Feliz adequately pled the absence of probable cause for arrest

"An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed a crime." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (cleaned up). "When determining whether probable cause exists courts must consider those facts *available to the officer* at the time of the arrest and immediately before it . . . ." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (quoting *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir.2002)). "The scope of an arresting officer's obligation to consider exculpatory evidence is guided by two competing principles. On the one hand, once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest. Yet, on the other hand, an officer may not disregard plainly exculpatory evidence." *Waldron v. Milana*, 541 F. App'x 5, 8–9 (2d Cir. 2013) (summary order) (cleaned up) (quoting *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001), and *Panetta*, 460 F.3d at 395); *see also*

*Jocks v. Tavernier*, 316 F.3d 128, 135–36 (2d Cir. 2003) ("We did not impose a duty on the arresting officer to investigate exculpatory defenses offered by the person being arrested . . . . On the other hand, we do not read [Second Circuit precedent] to permit an officer to deliberately disregard facts known to him which establish justification.").

Failure to produce a vehicle registration can violate New York law and therefore provide an officer probable cause for arrest. *Tompkins v. City of New York*, 50 F. Supp. 3d 426, 433 (S.D.N.Y. 2014) (citing N.Y. Veh. & Traf. Law § 401(4)). But that is not a basis to grant the motion to dismiss. Simply put, the amended complaint alleges that Feliz, when prompted, provided his "registration and insurance information." Am. Compl. ¶ 24. Defendants argue for probable cause only by reference to the footage, which the Court will not consider at this stage. The allegation in the amended complaint that Feliz provided the requested materials is sufficient to defeat the motion to dismiss on this issue.

Same too at this stage for the Defendants' contention that because Feliz was driving on a suspended license there was probable cause for the arrest. As an initial matter, typically, an officer has probable cause to arrest a driver if a check of the driver's license in the computerized police database shows that the license is suspended. *Briukhan v. City of New York*, 147 F. Supp. 3d 56, 61 (E.D.N.Y. 2015) (citing N.Y. Veh. & Traf. Law § 511(1)(a)). An officer has probable cause for arrest even if the information in the database was erroneous, so long as the officer "did not know or have reason to know that the information was false or unreliable." *Hughes v. McWilliams*, No. 04-CV-7030 (KMW), 2009 WL 4823940, at *3 (S.D.N.Y. Dec. 15, 2009), *aff'd*, 420 F. App'x 63 (2d Cir. 2011) (citing *Herring v. United States*, 555 U.S. 135, 146–47 (2009)). But, accepting as true the allegations in the amended complaint, Defendants' argument for probable cause based on a check of Feliz's license does not justify dismissal here.

*First*, the amended complaint does not allege that any Defendant actually performed a valid check of Feliz's license, only that Defendants took Feliz's license back to the patrol car and then returned to tell Feliz that his license was suspended, an assertion that Feliz denied.  Am. Compl. ¶¶ 25–28.  Though these allegations could support an inference that Defendants did in fact perform a license check, the Court at this stage must draw all inferences in favor of Feliz. *See Kassner*, 496 F.3d at 237.

Defendants argue that the body camera footage shows that a license check was performed.  Defs. Br. at 7 (citing Footage at 2:00–5:00).  But the Court will not consider the footage at this stage.

*Second*, even if Defendants did perform a license check, Feliz adequately pled that Defendants disregarded readily available exculpatory evidence that would have dispelled probable cause.  Pl. Br. at 16.  Specifically, the amended complaint alleges that when Defendants informed Feliz that his license was suspended, Feliz told the officers that he had "documentation that would conclusively demonstrate that the defendants' information was incorrect."  Am. Compl. ¶ 29; *see also id.* ¶¶ 57, 60 (referring to this documentation as "exculpatory evidence"). "Feliz requested permission to produce said documentary proof to defendants" but they denied his request.  *Id.* ¶¶ 30–32.  Feliz therefore adequately alleged that Defendants' "failure to perform the simple task of checking" exculpatory evidence available to them dispelled probable cause to arrest him.  *Russo v. City of Bridgeport*, 479 F.3d 196, 208 (2d Cir. 2007).

The district court's opinion in *Marchand v. Hartman*, 395 F. Supp. 3d 202 (D. Conn. 2019), the facts of which nearly mirror the present case, is instructive.  There, after a check of the computerized database revealed that the driver's license was suspended, the plaintiff asked the arresting officer to look at a letter on DMV letterhead that stated his license had been restored.

11

*Id.* at 217–18.  The court concluded that while the arresting officer's initial reliance on the computerized database was reasonable, her subsequent refusal to even look at the letter—which the plaintiff alleged was "plainly exculpatory evidence that was immediately available to her"—voided probable cause for arrest.  *Id.* at 218–21; *see Kerman v. City of New York*, 261 F.3d 229, 241 (2d Cir. 2001) (concluding that even though arresting officers initially had probable cause to arrest, they acted unreasonably in hanging up the phone on the arrestee's psychiatrist, who could have explained that he was not a threat to himself or others).  The same conclusion follows here, with the only difference being that unlike the *Marchand* plaintiff, whose claim survived summary judgment, Feliz need satisfy Rule 12(b)(6)'s less demanding standard.

The Court therefore concludes that Feliz adequately pled that Defendants lacked probable cause to arrest Feliz either because he failed to produce a registration or because he was driving on a suspended license.

### 2.  Defendants Tegan, Rodriguez, and Grove do not receive qualified immunity

Defendants argue that even if Defendants lacked probable cause for arrest, the Court should dismiss Feliz's false-arrest claims on the basis of qualified immunity.

"'Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'  If a plaintiff fails at either step, the official is entitled to qualified immunity."  *Vega v. Semple*, 963 F.3d 259, 273 (2d Cir. 2020) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).  The Court has already resolved the first step in Feliz's favor because Feliz has adequately alleged that he was arrested without probable cause, which, accepted as true, is unconstitutional.  Defendants argue that his claim fails at the second step because that right was not clearly established at the time.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* at 274 (quoting *Ashcroft*, 563 U.S. at 741). The primary purpose of the inquiry is to "ensure that the official being sued had fair warning that his or her actions were unlawful." *Id.* (quoting *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014)). "Under [the Supreme Court's] cases, the clearly established right must be defined with specificity." *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019). But that "is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Vega*, 963 F.3d at 275 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see also Ashcroft*, 563 U.S. at 741 ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."). Rather, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *see also Taylor v. Riojas*, 141 S. Ct. 52, 53–54 (2020); *Terebesi*, 764 F.3d at 230–31, 237 & n.20.

At issue here, "[t]here is no doubt that the right to be free from arrest without probable cause was clearly established" at the time of Feliz's arrest. *Jenkins v. City of New York*, 478 F.3d 76, 87–89 (2d Cir. 2007) (reversing a district court's grant of qualified immunity for a false-arrest claim); *Harewood v. Braithwaite*, 64 F. Supp. 3d 384, 400 (E.D.N.Y. 2014) ("Second Circuit precedent has placed the right to be free from false arrest well beyond the point of debate."). The "essential inquiry" is whether "there was 'arguable' probable cause at the time of arrest"—that is, "whether qualified immunity is available to an officer accused of false arrest [turns on] whether it was objectively reasonable for the officer to conclude that probable cause

existed."  *Jenkins*, 478 F.3d at 87 (quoting *Lennon v. Miller*, 66 F.3d 416, 423–24 (2d Cir. 1995)); *see also id.* ("'Arguable' probable cause should not be misunderstood to mean 'almost' probable cause.").

Accepting all allegations in the amended complaint as true, the Court concludes that qualified immunity is inappropriate at this stage of proceedings.  Feliz alleges that he offered to show the arresting Defendants documentary evidence that was plainly exculpatory by demonstrating that his license was not suspended.  By refusing to consider that available exculpatory evidence, Defendants are alleged to have acted in an objectively unreasonable fashion and violated clearly established law of the Second Circuit.  For example, in *Kerman v. City of New York*, officers arrested the plaintiff at his house following an anonymous call that a man with a gun was acting erratically.  261 F.3d at 232–33.  While handcuffed, the plaintiff was permitted to call his psychiatrist, who oversaw his mental-health treatment in an experimental study, but an arresting officer abruptly hung up the phone without speaking to the psychiatrist himself.  *Id.* at 232–33.  The officers then forcibly hospitalized the plaintiff, citing his dangerous mental state.  *Id.* at 233, 241.  On appeal from the district court's grant of summary judgment, the Second Circuit affirmed that the initial arrest and search of the plaintiff were reasonable, but it reversed the district court's grant of qualified immunity as to the plaintiff's claim for forcible hospitalization.  *Id.* at 238, 241.  The Second Circuit explained that the arresting officers "deliberately ignored . . . opportunities to confirm the seriousness of [the plaintiff's] condition," especially when one "hung up on [the psychiatrist] without making any effort to ascertain whether [the plaintiff] presented a threat . . . .  We cannot see the reasonableness of hanging up on a doctor in such a situation."  *Id.* at 241; *see also id.* (explaining that because the police allegedly "failed to reasonably investigate [the plaintiff's] mental state, [and] they also grossly

14

misjudged the situation as it unfolded before them").  Since *Kerman*, the Second Circuit has

repeatedly held, across a variety of contexts, that even when there is initial probable cause, an

officer may not disregard available exculpatory evidence that could dispel probable cause.  *E.g.*,

*Jocks*, 316 F.3d at 135; *Russo*, 479 F.3d at 208 (reversing grant of summary judgment to

defendant officers who detained the plaintiff for 217 days despite an exculpatory videotape in

their possession that they did not adequately investigate); *Schwartz v. Marcantonatos*, 567 F.

App'x 20, 23 (2d Cir. 2014) (summary order) (affirming denial of qualified immunity for false-

arrest claim where "the officers failed to consider the honest alternative" explanation that

negated probable cause); *Green v. City of New York*, 465 F.3d 65, 84 (2d Cir. 2006) (concluding

that a reasonable jury could conclude that the officer lacked probable cause to seize the plaintiff

because the officer "could have asked [the plaintiff] a series of simple questions to determine his

competence" (citing *Kerman*, 261 F.3d at 241)).

   The Government cites in response *Martinez v. Simonetti*, 202 F.3d 625 (2d Cir. 2000).

There, the arresting officer was told by multiple eyewitness officers on the scene that the plaintiff

had been the initial aggressor while the plaintiff claimed that he was innocent.  *Id.* at 634–35.

The district court denied qualified immunity because, it concluded, further investigation into the

plaintiff's hospital records would have refuted the officers' story and therefore voided probable

cause.  *Id.* at 635.  The Second Circuit reversed, reaffirming that an arresting officer "is not

required to explore and eliminate every theoretically plausible claim of innocence before making

an arrest."  *Id.* (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997)).  But

that holding is inapplicable here.  The Court agrees that Defendants here had no duty to

exhaustively explore Feliz's claims of innocence—but nor could they "disregard plainly

exculpatory evidence."  *Panetta*, 460 F.3d at 395; *see also Jocks*, 316 F.3d at 136 ("[W]e do not

read *Ricciuti* to permit an officer to deliberately disregard facts known to him . . . .").  The Court

therefore concludes, as the *Marchand* court did on identical facts, that qualified immunity is

inappropriate here.  395 F. Supp. 3d at 224.

### C.  Unlawful search and seizure of Feliz's person and property

"The Fourth Amendment, incorporated against the states by the Fourteenth Amendment,

guarantees all individuals the right to be free from unreasonable search and seizure." *Corley v.*

*Vance*, 365 F. Supp. 3d 407, 443 (S.D.N.Y. 2019).  The amended complaint alleges that

Defendants "subjected plaintiff to thorough bodily searches."  Am. Compl. ¶ 40.  Defendants

argue that because there was probable cause for arrest, the search of Feliz's person was a

permissible search incident to arrest.  Defs. Br. at 11 (citing *Evans v. Solomon*, 681 F.Supp.2d

233, 248 (E.D.N.Y. Jan. 14, 2010)).  But because the amended complaint adequately alleged that

probable cause for arrest was absent, this is not a basis for dismissal at this stage.

Further, Defendants in their reply argue that Feliz abandoned both of his search-and-

seizure claims in his response brief.  Defs. Reply at 10 (citing, e.g., *McLeod v. Verizon N.Y., Inc.*,

995 F. Supp. 2d 134, 143 (E.D.N.Y. 2014)).  The Court disagrees.  First, Feliz repeatedly

mentions his search-and-seizure claim in his response.  *E.g.*, Pls. Br. at 6–7, 21.  Second, Feliz

rebutted Defendants' argument that there was probable cause for arrest, which was Defendants'

primary basis for dismissal of the search-and-seizure claim.  *Id.* at 15–21.

Last, Defendants argue that Feliz failed to allege in his amended complaint any specific

facts to support his claim that Defendants unreasonably searched his property.  Def. Br. at 11.

The Court agrees.  The Court therefore grants Defendants' motion to dismiss Feliz's search-and-

seizure claim as to a search of property but denies Defendants' motion as to the bodily search of

Feliz incident to his arrest.

### D.  Malicious prosecution

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law."  *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010) (citations omitted).  This requires showing "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. N.Y. City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000).  Further, "[t]o establish a malicious prosecution claim under New York law, a plaintiff must prove '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'"  *Manganiello*, 612 F.3d at 161 (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)).

As explained, Feliz adequately alleged the absence of probable cause.  Nevertheless, Feliz fails to allege at least two other elements of a malicious-prosecution claim.  First, Feliz was released from custody without charges being filed against him.  Am. Compl. ¶ 49; Iheanachor Decl., Ex. C ("The People decline to prosecute this case . . . .").  A prosecution therefore was not initiated against Feliz.  *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010); *Roberts v. City of New York*, No. 16-CV-5409 (BMC), 2017 WL 4357291, at *9 (E.D.N.Y. Sept. 29, 2017), *aff'd sub nom. Roberts v. Azize*, 767 F. App'x 196 (2d Cir. 2019) (holding that a malicious-prosecution claim cannot proceed where the district attorney declined to prosecute plaintiff).  Second, Feliz was released from custody before being arraigned.  *See* Am. Compl. ¶ 47; Iheanachor Decl., Ex. C.  Feliz therefore cannot show "a sufficient post-arraignment liberty restraint to implicate [his] Fourth Amendment rights."  *Rohman*, 215 F.3d at 215; *Baker v. City*

*of New York*, No. 19-CV-8141 (AKH), 2021 WL 3781930, at *6–7 (S.D.N.Y. July 28, 2021)

(collecting cases).

The Court therefore dismisses Feliz's state and federal claims for malicious prosecution.[5]

### E.   Malicious abuse of process

"In New York, 'a malicious abuse-of-process claim lies against a defendant who (1)

employs regularly issued legal process to compel performance or forbearance of some act (2)

with intent to do harm without excuse of justification, and (3) in order to obtain a collateral

objective that is outside the legitimate ends of the process.'" *Savino v. City of New York*, 331

F.3d 63, 76 (2d Cir. 2003) (ultimately quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)).

"The pursuit of a collateral objective must occur after the process is issued; the mere act of

issuing process does not give rise to a claim." *Barmapov v. Barry*, No. 09-CV-03390 (RRM),

2011 WL 32371, at *5 (E.D.N.Y. Jan. 5, 2011) (quoting *Lopez v. City of New York*, 901 F. Supp.

684, 691 (S.D.N.Y. 1995)).

Feliz failed to allege facts adequate to satisfy several elements of this claim.  First,

because Feliz was never charged or even arraigned, he cannot allege legal process.  "Legal

process means that a court issued the process, and the plaintiff will be penalized if he violates it,

such as an arraignment." *Sforza v. City of New York*, No. 07-CIV-6122 (DLC), 2009 WL

857496, at *16 (S.D.N.Y. Mar. 31, 2009) (cleaned up).  By itself, a "warrantless arrest . . . does

not involve legal process." *Id.* at *17.  Second, Feliz has not alleged that Defendants "aimed to

---

[5] Defendants also argue that Feliz failed to allege the favorable-termination requirement because
the District Attorney's decision to decline to prosecute him was not an affirmative "indication of
innocence." *Lanning v. City of Glens Falls*, 908 F.3d 19, 26 (2d Cir. 2018).  The Court agrees
that under the rule in *Lanning*, Feliz likely failed to satisfy this element of a malicious-
prosecution claim.  But because that rule is the subject of a case pending before the Supreme
Court, *Thompson v. Clark*, 141 S. Ct. 1682 (2021), the Court does not rely on it here.

achieve a collateral purpose *beyond or in addition to* his criminal prosecution." *Pinter v. City of New York*, 976 F. Supp. 2d 539, 568 (S.D.N.Y. 2013) (quoting *Savino*, 331 F.3d at 77).

Feliz in his response does not address either of these deficiencies in this claim. In fact, malicious abuse of process is never mentioned in his brief and he therefore abandons this claim. *See McLeod, Inc.*, 995 F. Supp. 2d at 143. The Court dismisses Feliz's state and federal claims for malicious abuse of process.

### F. Free speech

Feliz's claims under the First Amendment require he show "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). Feliz has failed to adequately allege any of these elements. First, he does not identify any speech protected under state or federal law. Instead, the amended complaint contains only the vague allegation that Feliz "engaged in speech and activities protected by the First Amendment." Am. Compl. ¶ 90. That threadbare allegation is inadequate to survive a motion to dismiss. Second, Feliz does satisfy causation because even if Defendants allegedly lacked probable cause, Feliz does not allege facts that support the inference Defendants were retaliating against Feliz for engaging in protected speech or activity. *Id.* Third, Feliz does not allege that his exercise of First Amendment rights was actually chilled by Defendants' conduct. Last, Feliz has again abandoned this claim, which is not mentioned in his response. *See McLeod*, 995 F. Supp. 2d at 143. The Court dismisses Feliz's state and federal free-speech claims.

### G. Equal protection

The amended complaint alleges violations of state and federal equal-protection guarantees because Defendants discriminated against Feliz—who is a "male of Hispanic or Latino descent"—on the basis of his "race, color, ethnicity, national origin, ancestry, sex, gender, religion, religious practice, age, disability or sexual orientation."  Am. Compl. ¶¶ 164–65.  In his response brief, Feliz appears to advance his claims only as to "racial animus."  Pl. Br. at 24.

"The Second Circuit has held that a plaintiff may bring an equal protection claim based on racial discrimination: (1) where a law or policy expressly classifies on the basis of race, (2) where a facially neutral law or policy is applied in an intentionally discriminatory manner, or (3) where a facially neutral statute or policy has an adverse effect and was motivated by discriminatory animus." *Ali v. Connick*, 136 F. Supp. 3d 270, 275 (E.D.N.Y. 2015) (citing *Brown v. Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000)).  Where a plaintiff alleges that he was selectively prosecuted in violation of the Equal Protect Clause, the plaintiff must further allege that he, "compared with others similarly situated, was selectively treated." *Wang v. Pataki*, 396 F. Supp. 2d 446, 457 (S.D.N.Y. 2005) (quoting *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999)).  But where the plaintiff instead alleges a theory of "discriminatory application of the law, or . . . a theory of discriminatory motivation underlying a facially neutral policy or statute," the plaintiff "need not plead or show the disparate treatment of other similarly situated individuals." *Pyke v. Cuomo*, 258 F.3d 107, 108–09 (2d Cir. 2001); *see also Raza v. City of New York*, 998 F. Supp. 2d 70, 81 (E.D.N.Y. 2013)

Defendants argue that Feliz has not adequately pled disparate treatment compared to any similar situated individual.  Defs. Br. at 16.  The Court agrees and therefore concludes that Feliz cannot allege a claim for selective prosecution based on disparate treatment.

But Defendants further argue that Feliz "failed to plead facts tending to show that the defendant officers' decision to arrest him was motivated by discriminatory considerations." *Id.*; *see also* Defs. Reply at 8 ("[B]oth the Amended Complaint and opposition are wholly devoid of any allegations suggesting any discriminatory intent on defendants' part."). This assertion overlooks Feliz's allegations that the same officers that arrested him also used racially derogatory language when questioning him at the station shortly after. Am. Compl. ¶ 42; *see* Pl. Br. at 23–24 (citing this paragraph three times). The Court concludes that this allegation of racially discriminatory language, when paired with an arrest that, as alleged, was not supported by probable cause, is sufficient to make out an equal-protection claim based on the application of a facially neutral law in an intentionally discriminatory race-based manner. *Doe v. Vill. of Mamaroneck*, 462 F. Supp. 2d 520, 543 (S.D.N.Y. 2006); *Ali*, 136 F. Supp. 3d at 275–76 (stating that "where verbal statements are accompanied by an appreciable injury, an equal protection claim may be cognizable" and collecting cases that held the same).

## H. Bias-based profiling

Feliz next alleges bias-based profiling under Section 14-151 of the New York City Administrative Code. The Court does not reach the merits of this claim. "Under New York law, a notice of claim is a condition precedent to bringing a personal injury action against a municipal corporation." *Fishman v. City of New Rochelle*, No. 19-CV-00265 (NSR), 2021 WL 4925518, at *10 (S.D.N.Y. Oct. 19, 2021) (quoting *Parise v. N.Y.C. Dep't of Sanitation*, 306 F. App'x 695, 697 (2d Cir. 2009)). Specifically, "[s]ection 50-e of the New York General Municipal Law requires that a plaintiff file . . . a notice of claim within ninety days of the incident giving rise to the claim." *Id.* (citing N.Y. Gen. Mun. Law § 50-e(1)).

Here, Feliz failed to include a claim of bias-based profiling in the notice of claim submitted to the City.  Notice of Claim at 3 (listing claims against the City and excluding bias-based profiling).  The Court therefore lacks subject matter jurisdiction to consider the claim and the Court dismisses Feliz's bias-based profiling claim without prejudice.  *Fishman*, 2021 WL 4925518, at *10 (collecting cases).

## I.   Assault and battery

Feliz raises a claim for assault and battery under New York law.  Am. Compl. ¶¶ 123–28.  This cause of action—which merely recites the elements of the claim—apparently relates to the allegation that when Defendants arrested Feliz, they physically restrained him and "affix[ed] metal handcuffs to his wrists in an excessively tight fashion."  *Id.* ¶ 36.  Defendants argue that this claim should be dismissed because Feliz failed to allege specific facts to support a claim of battery or assault under New York law.  Defs. Br. at 26–28.  Feliz did not respond to these arguments or even mention assault, battery, or the tightness of handcuffs in his response.  This claim is therefore abandoned and the Court dismisses it.  *See McLeod, Inc.*, 995 F. Supp. 2d at 143; *In re Adelphia Commc'ns Corp. Secs. and Derivative Litig.*, No. 03-MDL-1529 (JMF), 2013 WL 6838899, at *13 (S.D.N.Y. Dec. 27, 2013) (collecting cases).

## J.   Failure to intervene

"An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official."  *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 619 (E.D.N.Y. 2017) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).  "To establish a claim for failure to intervene, a plaintiff must show (1) the officer's

22

failure permitted fellow officers to violate plaintiff's clearly established statutory or constitutional rights, and (2) it was objectively unreasonable for him to believe that his fellow officers' conduct did not violate those rights. *Id.* (cleaned up) (quoting *Ricciuti*, 124 F.3d at 129). "Additionally, Plaintiff must show that the officer had 'a realistic opportunity to intervene to prevent the harm from occurring' but failed to do so." *Id.* (quoting *Cerbelli v. City of New York*, No. 99-CV-6846, 2008 WL 4449634, at *11 (E.D.N.Y. Oct. 1, 2008)).

Feliz alleges that each Defendant officer failed to intervene when other officers violated Feliz's constitutional rights. His failure-to-intervene claim is therefore "contingent upon the disposition of the primary claims underlying the failure to intervene claim." *Matthews v. City of New York*, 889 F. Supp. 2d 418, 444 (E.D.N.Y. 2012). As explained, Feliz adequately pled constitutional claims for false arrest, unlawful search and seizure, and violation of equal protection. The Court will therefore sustain these claims of failure to intervene but otherwise dismiss Feliz's failure-to-intervene claims as to any other underlying constitutional right.

In addition to arguing that no constitutional right was violated, Defendants argue that Feliz failed to adequately plead a "realistic opportunity to intervene." Defs. Br. at 20. The Court disagrees and finds adequate Feliz's allegation that Defendants present at the scene of the arrest had an opportunity to intercede and, for example, attempt to stop the arrest. Am. Compl. ¶ 193; *see* Pl. Br. at 21.

## K. Conspiracy to violate civil rights

"To establish a claim under § 1985(3), a plaintiff must show '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or

deprived of any right of a citizen of the United States.'"  *Marshall v. Port Auth. of N.Y. & N.J.*,
No. 19-CV-2168 (WHP), 2020 WL 5633155, at *10 (S.D.N.Y. Sept. 21, 2020) (quoting *Mian v.
Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087–88 (2d Cir. 1993) (per curiam)).
"Additionally, the conspiracy is actionable only if it involves 'some racial, or perhaps otherwise
class-based, invidious discriminatory animus behind the conspirators' action.'"  *Id.* (quoting
*United Bd. of Carpenters Local 610 v. Scott*, 463 U.S. 825, 829 (1983)).

Defendants argue (1) that no constitutional rights were violated, (2) that Feliz "failed to
plead facts tending to support that the defendant officers 'entered into an agreement, express or
tacit, to achieve the unlawful end,'" and (3) that Feliz's claim is barred by the intra-corporate
conspiracy doctrine because all Defendants are employees of the same entity.  Defs. Br. at 17–18
(quoting *Marshall*, 2020 WL 5633155, at *10).  The Court concludes that the second of these
arguments, which Feliz does not address in his response, is sufficient to dismiss Feliz's claim.

Even when a plaintiff adequately alleges other constitutional deprivations, he must
further provide a "factual basis supporting a meeting of the minds."  *Marshall*, 2020 WL
5633155, at *10 (quoting *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003)) (rejecting a § 1985
conspiracy claim even where plaintiff adequately alleged a false-arrest claim).  The amended
complaint, which contains only conclusory allegations that Defendants engaged in a conspiracy
against Feliz, Am. Compl. ¶ 184–91, fails to satisfy that requirement, *see Bermudez v. City of
New York*, No. 11 CIV. 750 LAP, 2013 WL 593791, at *8 (S.D.N.Y. Feb. 14, 2013)
("Conclusory allegations of conspiracy are insufficient to survive a motion to dismiss." (cleaned
up)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002).

The Court therefore dismisses Feliz's claim for conspiracy to interfere with civil rights.

### L.  Negligent hiring, retention, and supervision

"A municipality like the City of New York 'may not be held liable in an action under 42 U.S.C. § 1983 solely on the basis of *respondeat superior*.'"  *Felix v. City of New York*, 344 F. Supp. 3d 644, 653 (S.D.N.Y. 2018) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995)).  Plaintiff raises two causes of action that run directly against the City.  The first of these is for negligent hiring.  Such a claim requires that Feliz allege that (1) the individual Defendants and the City were in an employee-employer relationship, (2) that the City "knew or should have known" of the Defendant employees' "propensity for the conduct which caused the injury prior to the injury's occurrence, and (3) that the tort was committed on the employer's premises or with the employer's chattels."  *G.E. v. City of New York*, No. 12-CV-5967 (RRM), 2017 WL 4357340, at *9 (E.D.N.Y. Sept. 29, 2017) (citing *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004)).

Defendants contest only the second of these elements, arguing that Feliz alleged no facts tending to show that the City was aware, or should have been aware, of the individual Defendants' propensity to commit the actions that harmed Feliz.  Defs. Br. at 30–31.  Feliz does not mention this claim in his response, let alone attempt to show that he pled adequate facts to state a negligent-hiring claim.  *See McLeod, Inc.*, 995 F. Supp. 2d at 143.  The Court therefore dismisses Feliz's claims for negligent hiring.  *See Albert v. City of New York*, No. 17-CV-04315-ARR, 2018 WL 5084824, at *9 (E.D.N.Y. Oct. 18, 2018) (dismissing claims for negligent training and supervision where the complaint contained "only boilerplate allegations"); *G.E.*, 2017 WL 4357340, at *9 (dismissing a claim of negligent hiring).

### M. *Monell* liability

Feliz also argues that the City is liable because it maintains a "policy or custom that caused [him] to be deprived of his civil rights."  Am. Compl. ¶ 208.  This is commonly referred

to as *Monell* liability.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658

(1978).  "[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a

plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2)

causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Wray v. City of New

York*, 490 F.3d 189, 195 (2d Cir. 2007) (quotations and citation omitted).  The "official policy"

requirement may be met (1) by alleging a practice so "persistent and widespread," or "permanent

and well settled[,] as to constitute a 'custom or usage' with the force of law" and to "imply the

constructive knowledge of policymaking officials," *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d

864, 870–71 (2d Cir. 1992) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 113 (1988)

(plurality)); or (2) by identifying a failure to train or supervise subordinates "amount[ing] to

deliberate indifference to the rights of those with whom [the municipality's employees] come

into contact," *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Connick v. Thompson*,

563 U.S. 51, 61 (2011).  "A single incident by itself is generally insufficient to establish the

affirmative link between the municipal policy or custom and the alleged unconstitutional

violation."  *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) (citing

*Okla. City v. Tuttle*, 471 U.S. 808, 824 (1985)).  "In addition, a plaintiff must establish a causal

link between the municipality's policy, custom, or practice and the alleged constitutional injury."

*Jones v. Westchester Cnty.*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016) (citing *Roe v. City of

Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008)).

Feliz failed to adequately allege a policy or custom necessary to hold the City liable.  The

amended complaint contains only conclusory allegations that the City maintained an unlawful

policy or custom, that it failed to adequately train or supervise, and that the City should have

implemented "corrective or preventive measures."  Am. Compl. ¶ 207–12.  Such "boilerplate

assertions of municipal policy are insufficient to state a claim for *Monell* liability." *Bishop v. City of New York*, No. 13-CV-9203 (AJN), 2016 WL 4484245, at *4 (S.D.N.Y. Aug. 18, 2016) (collecting cases). Feliz fails to address Defendants' argument to this effect—he does not mention municipal liability in his brief or identify any policy or custom that caused his injury. Feliz's *Monell* liability claims are therefore abandoned. *See McLeod*, 995 F. Supp. 2d at 143.

Even if the Court overlooked abandonment—which it does not—the amended complaint fails to identify an official policy or custom. The closest that the amended complaint comes is to summarize a series of news media articles that catalogue examples of NYPD officers lying in court, using excessive force, adhering to arrest quotas, and being inadequately disciplined for violating NYPD rules. Am. Compl. ¶¶ 65–78. This amalgam of conclusory allegations disconnected from the circumstances of this case is inadequate to establish a policy or custom or to show a causal link with Feliz's particular constitutional injury. *Beltran v. City of New York*, No. 19 CIV. 4647 (NRB), 2020 WL 4260990, at *3–4 (S.D.N.Y. July 22, 2020) (rejecting similar allegations of arrest quotas and inadequate discipline of officers); *Alexander v. N.Y.C. Dep't of Educ.*, No. 19-CV-7023 (AJN), 2020 WL 7027509, at *12 (S.D.N.Y. Nov. 30, 2020) (collecting cases that reject *Monell* claims where the plaintiff's "assertions are too conclusory").

### N.  Claims as to Defendant Rodriguez

Defendants argue that all claims against Rodriguez should be dismissed because he was not personally involved in Feliz's arrest and the amended complaint contains only "conclusory assertions" that he was present during the incidents in question. Defs. Br. at 31–32 (citing *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004)). This argument asks the Court to disbelieve plausible allegations in the amended complaint, which plainly states that Rodriguez was present at the time of Feliz's arrest. Such a request is inappropriate under

27

Rule 12(b)(6). *Kassner*, 496 F.3d at 237; *York,* 286 F.3d at 125. Defendants' case law is not to the contrary, as it involves situations in which the complaint alleged only that a defendant was a supervisor but was not personally involved, which is generally inadequate to support a § 1983 claim. *See Back*, 365 F.3d at 127. Defendants argue that the body camera footage proves Rodriguez was not present. Defs. Reply at 9. As explained, the Court will not consider the footage at this stage. Moreover, the footage does not identify the officers depicted by name and so would not, by itself, necessarily prove or disprove that Rodriguez was present.

### O. Feliz's remaining requests

Feliz's response to Defendants' motion to dismiss also requests that the Court grant Feliz "summary judgment as to his claims sounding in false arrest, false imprisonment, and illegal search and seizure" and award Feliz attorneys' fees for responding to Defendants' "frivolous" motion. Pl. Br. at 27. These requests are readily denied. Summary judgment is inappropriate because genuine disputes of material fact remain. Fed. R. Civ. P. 56. And Defendants' motion, which this Court grants in significant part, is no justification for attorneys' fees.

The Court also cautions Feliz's counsel against the unprofessional and unfounded accusations that riddle his brief. *E.g.*, Pl. Br. at 5, 20, 27 (accusing defense counsel of "fabrications" and "fraud"); *id.* at 8 (referring to Defendants' motion as "farcical" and suggesting that defense counsel "lack[s] the ability to comprehend basic legal principles"). The Court can discern no basis for these accusations. More is expected of an attorney licensed to practice before this Court.

### IV.   Conclusion

For the above reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss dated October 30, 2020. Dkt. No. 43. The Court dismisses with

prejudice the first, second, seventh, eighth, ninth, tenth, eleventh, fifteenth, eighteenth, and nineteenth causes of action in the amended complaint.  The Court also dismisses with prejudice the third and fourth causes of action except insofar as Feliz has adequately alleged a bodily search of his person.  The Court dismisses without prejudice the twelfth cause of action for lack of subject matter jurisdiction.

The Court DENIES AS MOOT Defendants' earlier motion to dismiss under Rule 12(c) dated August 7, 2020.  Dkt. No. 29.

The Court adjourned sine die the pretrial conference pending resolution of this motion. Dkt. No. 24.  The parties shall be referred by separate order to the Magistrate Judge for further pretrial proceedings.

This resolves docket numbers 29 and 43.


SO ORDERED.

Dated:  February 14, 2022
          New York, New York

_____
          ALISON J. NATHAN
          United States District Judge