UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ROBINSON FELIZ,

                  Plaintiff,

    -against-

CITY OF NEW YORK, ALEX TEGAN, RONNIE
RODRIGUEZ and MICHAEL GROVE,

                Defendants.
-------------------------------------------------------------X

**SECOND AMENDED
COMPLAINT**

<u>Jury Trial Demanded</u>

Docket No. 19-cv-6305 (VSB) (SLC)

       Plaintiff, Mr. Robinson Feliz, by his attorneys, Sim & DePaola, LLP, for his complaint

against the above Defendants, City of New York, Alex Tegan, Ronnie Rodriguez and Michael

Grove, respectfully alleges and states as follows:

## PRELIMINARY STATEMENT

1.    This is a civil rights action, in which plaintiff seeks relief vis-à-vis 42 U.S.C. §§ 1981,

1983, 1985, 1986 and 1988, as well as the laws of the State of New York, for the violations of his

civil rights, as guaranteed by Constitution of the United States, in addition to the Constitution and

laws of the State of New York.

2.    Plaintiff's claims arise from a May 15, 2018 incident, in which defendants, acting under

color of state law, caused plaintiff to be wrongfully stopped, questioned, searched, seized, arrested,

detained, assaulted and battered. As a result, the plaintiff was deprived of his liberty and caused to

sustain various physical and emotional damages.

3.    Plaintiff seeks monetary damages (compensatory and punitive) against defendants, as well

as an award of costs and attorneys' fees, in addition to such other and further relief as the Court

may deem just and proper.

## JURISDICTION

4.      This action arises under the First, Fourth, Sixth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988, as well as the laws and constitution of the State of New York.

5.      This Court has subject matter jurisdiction over this action and each of the individual claims, pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), 1343 (a)(4) and 1367(a), in addition to the doctrine of supplemental jurisdiction.

## VENUE

6.      Venue is properly laid within the Southern District of New York, as the defendant, City of New York, is located therein and a substantial part of the events giving rise to the claims occurred within the boundaries of the Southern District. 28 U.S.C. §§ 1391(b) and 1391(c).

## PARTIES

7.      Plaintiff, Mr. Robinson Feliz ("Mr. Feliz"), is a male of Hispanic or Latino descent or ethnicity, who resides within the County, City and State of New York.

8.      Defendant, City of New York ("City"), is a municipal corporation organized under the laws of the State of New York.

9.      At all times relevant hereto, defendant City, acting through the New York City Police Department ("NYPD") was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel, including police officers, detectives and supervisory officers as well as the individually named Defendants herein.

10.     In addition, at all times here relevant, defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

11.     Defendant, Alex Tegan ("Tegan"), was, at all times here relevant, a police officer or detective employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Tegan was, at all times relevant herein, a police officer or detective, under Shield No. 9383 and Tax Reg. No. 963819, assigned to the NYPD's 33rd precinct, with an address of 2207 Amsterdam Ave, New York, New York 10032. Defendant Tegan is being sued in his individual and official capacities.

12.     Defendant Ronnie Rodriguez ("Rodriguez") was, at all times here relevant, a police officer and/or detective employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Rodriguez was, at all times relevant herein, a Sergeant, under Shield No. 1501 and Tax Reg. No. 947425, assigned to the NYPD's 33rd precinct, with an address of 2207 Amsterdam Ave, New York, NY 10032. Defendant Rodriguez is being sued in his individual and official capacities.

13.     Defendant, Michael Grove ("Grove"), was, at all times here relevant, a police officer or detective employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Grove was, at all times relevant herein, a police officer or detective, assigned to the NYPD's 33rd precinct, with an address of 2207 Amsterdam Ave, New York, New York 10032. Defendant Grove is being sued in his individual and official capacities.

14.     At all times referenced herein, defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

15.     Within ninety-days of the relevant accrual dates, plaintiff served the New York City Office of the Comptroller with a written notice of claim, pursuant to the New York General Municipal Law ("GML").

16.     Over thirty-days have elapsed since the service of said notice and this matter has not been settled or otherwise disposed of.

17.     Plaintiff has complied with municipal defendant's request for an oral examination, pursuant to GML § 50-H.

18.     This action has been commenced within one-year-and-ninety-days from the relevant accrual dates.

## FACTUAL CHARGES

19.     On May 15, 2018, at approximately 9:00 p.m., Mr. Feliz was lawfully operating his motor vehicle in the vicinity of 164th Street and Fort Washington Avenue, within the County, City and State of New York.

20.     Mr. Feliz was operating his motor vehicle lawfully, as he was in obeyance all federal, state and local laws, including the New York Penal Law and New York Vehicle & Traffic Law.

21.     On said date and time, defendants, including Tegan, Rodriguez and Grove, unlawfully stopped plaintiff's motor vehicle without any probable cause or reasonable suspicion to do so, as defendants had not observed plaintiff or plaintiff's vehicle violate any federal, state or local law, including those enumerated within the New York Vehicle & Traffic Law.

22.     Defendants, including Tegan, Rodriguez and Grove, falsely alleged that Mr. Feliz drove his motor vehicle through a steady red stoplight, when he made a right turn from 165th Street on to Fort Washington Avenue, despite their knowledge that said allegations were untrue and complete fabrications.

23.     Plaintiff did not drive through a red stoplight or commit any other crime or violation of the law, on May 15, 2018.

24.     Defendants, including Tegan, Rodriguez and Grove, then demanded plaintiff's documentation, including his driver's license, registration and insurance information.

25.     Defendants, including Tegan, Rodriguez and Grove, proceeded back to their patrol car, so that they could verify plaintiff's information with the NYPD and New York State Department of Motor Vehicles.

26.     Defendants, including Tegan, Rodriguez and Grove, returned to question Mr. Feliz regarding the status of his driver's license, specifically as to whether his license to operate a motor vehicle was currently suspended.

27.     Plaintiff replied that his license to operate a motor vehicle was not suspended and that his driver's license was, and is still is, valid.

28.     Defendants, including Tegan, Rodriguez and Grove, then informed plaintiff that his driver's license was suspended and proceeded to placed him in handcuffs without any probable cause or justification to do so, as plaintiff's driver's license was not suspended and defendants did not possess any reasonable suspicion or probable cause to believe otherwise.

29.     Mr. Feliz informed defendants, including Tegan, Rodriguez and Grove, that he was in possession of documentary proof as to the validity of his driver's license, specifically

documentation that would conclusively demonstrate that the defendants' information was incorrect or that it did not accurately reflect the current status of his driver's license.

30.     Mr. Feliz requested permission to produce said documentary proof to defendants, including Tegan, Rodriguez and Grove, which plaintiff had on his person or within his motor vehicle.

31.     Defendants, including Tegan, Rodriguez and Grove, however, denied plaintiff's request, despite said documents being readily accessible.

32.     Defendants, including Tegan, Rodriguez and Grove, failed and refused to conduct even a cursory investigation before placing Mr. Feliz under arrest, despite possessing reason to believe that such investigation was necessary and warranted by the facts that were presented and known to defendants immediately prior to their arrest of plaintiff.

33.      Defendants, including Tegan, Rodriguez and Grove, unlawfully arrested plaintiff without probable cause or justification on May 15, 2018, because plaintiff's driver's license was valid and not suspended and plaintiff did not drive through a red stoplight, as falsely alleged by defendants.

34.     Defendant Tegan was Mr. Feliz arresting officer, under NYPD Arrest No. M18627229.

35.     Defendants, including Tegan, Rodriguez and Grove, were fully aware that Plaintiff did not commit any crime or violation of the law, including driving with a suspended driver's license and driving through a red stoplight, but knowingly and intentionally chose to state otherwise, so that defendants could justify and excuse an otherwise invalid and illegal arrest.

36.     Defendants, including Tegan, Rodriguez, and Grove, then proceeded to conduct an illegal search of the Plaintiff's person and vehicle without reasonable suspicion, probable cause, or legal justification whatsoever as to the commission of unlawful conduct.

37.     Defendants, including Tegan, Rodriguez and Grove, committed multiple assaults and batteries committed to plaintiff's person, including, but not limited to, grabbing him by the arms,

physically restraining, violently contorting his arms behind his back and then affixing metal handcuffs to his wrists in an excessively tight fashion.

38.    Defendants, including Tegan, Rodriguez and Grove, refused to loosen the excessively tight handcuffs for several hours, despite multiple complaints and requests to do so from plaintiff.

39.    Defendants, including Tegan, Rodriguez and Grove, then placed plaintiff in a police vehicle, before removing him against his will to the NYPD's 33rd Precinct.

40.    Upon arrival at said precinct, Mr. Feliz was criminally processed by defendants, including Tegan, Rodriguez and Grove.

41.    Defendants, including Tegan, Rodriguez and Grove, subjected plaintiff to thorough bodily searches, questions as to his pedigree, photographs of his person and face, as well as the recording of his fingerprints.

42.    Defendants, including Tegan, Rodriguez and Grove, proceeded to place plaintiff inside an interrogation room, where they proceeded to illegally question plaintiff about unrelated criminal activity in the neighborhood in the absence of counsel and without being informed of his rights, including his right to remain silent and his right to be afforded the assistance of counsel, pursuant to *Miranda v. Arizona*.

43.    Defendants, including Tegan, Rodriguez and Grove, directed racially and ethnically discriminatory and derisive language toward plaintiff, namely insults and other derogatory remarks particular to individuals of Hispanic or Latino descent, national origin or ethnicity, such as plaintiff.

44.    Defendants, including Tegan, Rodriguez and Grove, then informed plaintiff that he would be released without being charged, if he agreed to provide defendants with the information they desired.

45.     Plaintiff responded that he could not provide defendants with the information they demanded, because such knowledge was not known to him.

46.     Defendants, including Tegan, Rodriguez and Grove, in retaliation for plaintiff's failure and inability to acquiesce to their coercive demands, informed plaintiff that they would not be able to drop the charges against him or release him from their custody, regardless of the actual status of his driver's license, and that he would need to sort it out with the judge.

47.     Defendants, including Tegan, Rodriguez and Grove, then removed plaintiff against his will to another NYPD precinct, where he would remain unlawfully detained for multiple additional hours.

48.     Mr. Feliz was then removed to New York County central booking, where he was detained within three (3) distinct cells, while awaiting his criminal court arraignment.

49.     Defendants, including Tegan, Rodriguez and Grove, intentionally provided said false information to the New York County District Attorney's Office ("DANY"), so that a criminal prosecution would be initiated against Mr. Feliz, namely that Mr. Feliz had committed various crimes and violations of the law, including Aggravated Unlicensed Operation of a Motor Vehicle in the Third Degree and other related offenses, despite the actual validity of plaintiff's driver's license being known to said defendants.

50.     Upon review of the relevant facts, which were also known to defendants and which conclusively established the validity of plaintiff's driver's license at the time plaintiff was stopped and arrested by defendants, including Tegan, Rodriguez and Grove, the DANY declined to prosecute Mr. Feliz, as to any of the charges alleged by defendants, including Tegan, Rodriguez and Grove.

51.     At no point did Defendants, including Tegan, Rodriguez and Grove, ever observe Mr. Feliz commit any crime or offense.

52.     Defendants never possessed a judicially authorized warrant for plaintiff's arrest.

53.     Defendants, including Tegan, Rodriguez and Grove, intentionally, knowingly and falsely made said allegations to conceal their otherwise illegal, tortious and sinister acts, namely their illegal stop and arrest of plaintiff without a search or arrest warrant, probable cause or reasonable suspicion.

54.     Defendants, including Tegan, Rodriguez and Grove, suppressed evidence and engaged in conduct undertaken in bad faith, namely their failure to inform the DANY that plaintiff was in possession of documentary proof that would have established his innocence of all alleged charges and that defendants confirmed plaintiff's innocence after their own review of said documents.

55.     Defendants have displayed a pattern and practice of falsely alleging the crime of Aggravated Unlicensed Operation of a Motor Vehicle to justify otherwise unwarranted arrests, so that criminal prosecutions could be coercively employed to compel arrestees to divulge information regarding unrelated criminal activity.

56.     Plaintiff was wrongfully incarcerated for approximately two (2) days, or approximately twenty-three (23) hours, until he was  eventually released on, or about, May 16, 2018, at approximately 8:00 p.m., after the DANY informed defendants and the criminal court of its decision declining to prosecute the charges against Mr. Feliz, as alleged by defendants.

57.     At all times relevant hereto, defendants, including Tegan, Rodriguez and Grove, were involved in the decision to arrest plaintiff without probable cause or failed to intervene when they observed others arresting Plaintiff without probable cause.

58.    Defendants, including Tegan, Rodriguez and Grove, used plaintiff's arrest and  threat of future criminal prosecution as leverage to compel plaintiff to divulge information about unrelated criminal activity; to incur additional overtime compensation, benefits and career favor from their superior officers; to avoid any adverse consequences that would have resulted from a failure to meet NYPD departmental arrest quotas; and to conceal their egregious violations of proper NYPD procedures and other gross police misconduct, including their fabrications of fictitious observations, evidence and information, in addition to their suppression of exculpatory evidence, such as the documentary proof within plaintiff's possession that would have conclusively established the validity of his driver's license.

59.    Defendants, including Tegan, Rodriguez and Grove, unjustly and unlawfully targeted plaintiff for police intervention, arrest and prosecution, due to their impermissible considerations, regarding plaintiff's color, race, national origin, ethnicity, gender or sex, or defendants' perceptions thereof, as defendants would not have stopped, seized, arrested or detained plaintiff, if he was not a male of Hispanic or Latino descent, ethnicity or national origin, and therefore a member of a protected class, as belonging to a racial or ethnic minority.

60.    Defendants, including Tegan, Rodriguez and Grove, acted to selectively target plaintiff, because of his race, national origin, color or ethnicity, because defendants failed to stop, seize, detain or arrest multiple other white individuals who were operating motor vehicles in the same manner and at the same time and place as plaintiff.

61.    Defendants, Tegan, Rodriguez and Grove, conspired with each other to illegally stop, seize and detain plaintiff, as well as to falsely arrest and maliciously prosecute plaintiff, by personally, telephonically or electronically conferring with each other, regarding the fabrication of the

aforementioned non-existent evidence the suppression of exculpatory evidence, as well the manner and means by which said fabrications would be forwarded to the District Attorney's Office.

62.    Plaintiff asserts that the defendants, including Tegan, Rodriguez and Grove, who violated plaintiff's civil rights, are part of a larger pattern and practice of similar misconduct, which is so widespread, pervasive and consistent throughout the NYPD and the City of New York that the commission such constitutionally violative behavior has become tantamount to an official policy or custom within the NYPD and City of New York or, at the very least, conclusive evidence that the City and the NYPD have either tacitly approved of such egregious wrongdoings or that they have become deliberately indifferent to the civil rights of those who may come into contact with their police officers.

63.    The individually named defendants herein, as well as other officers serving in the employ of the NYPD and City of New York, have blatantly, shamelessly, consistently and repeatedly engaged in conduct violative of the civil rights guaranteed and protected by Constitution of the United States, in addition to the laws and Constitution of the State of New York, all without incurring any ramifications for such misconduct and, ostensibly, with the full and complete blessing of the NYPD, the City of New York and their respective policymakers and supervisors.

64.    *The New York Times*, as well as numerous other reputable journalistic enterprises, have reported on the widespread corruption within the NYPD and City of New York, particularly the incredibly disconcerting proclivity of many NYPD officers to lie about subject matters that are materially relevant to criminal prosecutions, including the complete fabrication of arrest evidence and witnesses. Also detailed, is the NYPD's obstinate refusal to effectuate corrective or preventive measures to combat the inevitable recurrence of such misdeeds, and perhaps most troubling, the

NYPD's alarming tendency to, instead, reward and promote these officers, including those who were inculpated via incontrovertible evidence, such as video evidence.

65.      The constitutionally repugnant behavior that persists within the ranks of the NYPD results from the NYPD's own policies, rules and procedures, namely the NYPD's incredibly flawed and illegal use of arrest quotas. Despite its illegality, such policies remain systemic throughout the NYPD and its individual commands. The NYPD, however, was not content in compelling its officers to effect as many arrests as possible, regardless of the presence of any legal right to do, it promulgated various subsets of quotas, which are predicated on race, color or ethnicity. Additionally, the NYPD, its supervisors or policymakers would assign varying point values to arrests, which were, again, impermissibly based upon the arrestee's race, color or ethnicity. Unsurprisingly, officers would be better rewarded for minority arrests or summonses. This egregious conduct has reported by numerous respected media outlets and publications and has even formed the basis for federal lawsuits against the City and the NYPD, which were commenced by its own employee officers.

66.      On June 17, 2020, the *New York Daily News* published an article, by Graham Rayman, entitled "Brooklyn Cop Claims he was Punished for not Meeting Arrest Quotas, Refusing to Take Responsibility for Controversial Arrest in which he Wasn't Involved," describing allegations from an NYPD Police Officer, Terrence Dickerson, that he was retaliated against by the NYPD for refusing to adhere to mandatory racially based arrest quotas and for his refusal to accept responsibility for a controversial and publicized arrest via the excessive force, despite the fact that he was not even at the scene.

67.      Another article with a title that speaks for itself, also published by the *New York Daily News*, on December 5, 2019, and written by Graham Rayman, is entitled "Ex-Cop Details NYPD

'Collar Quotas'—Arrest Black and Hispanic Men, 'No Cuffs on Soft Targets' of Jews, Asians, Whites: Court Docs."

68.     *The New York Times*, on December 6, 2019, published an article by Joseph Goldstein and Ashley Southall, entitled "I Got Tired of Hunting Black and Hispanic People," which revealed a disturbing account from a different NYPD Police Officer, Anthony Diaz, describing a police force that measures the quality of police work by the quantity of minority arrests.

69.     On March 18, 2018, *The New York Times* published an explosive article, entitled "Promotions, Not Punishments for Officers Accused of Lying," written by Joseph Goldstein. Mr. Goldstein shines a light on the multitude of flaws within the CCRB and the NYPD, highlighting the fact that the substantiation of a claim against an officer will invariably rely on the presence of incontrovertible proof against the officer. Due to the rarity availability of this type of evidence, an alarmingly small percentage of officer misconduct claims are substantiated. The CCRB is further handicapped by a terribly designed system that requires evidence of a virtually indisputable nature to substantiate any claim against an officer. The article also details the NYPD's persistent reluctance to investigate or discipline officers who lie and even posits that this reluctance is a significant cause of the lying pandemic within the NYPD. The article references various officers and detectives who were the subject of credible accusations relating to the officers' intentionally false statements, with some allegations coming from federal and state judges.

70.     On September 12, 2019, *The New York Times* published another article by Joseph Goldstein, entitled "Officers Said They Smelled Pot. The Judge Called Them Liars." Unsurprisingly, this article dealt with the unusually high frequency of officers using the odor of marijuana to excuse a search that conspicuously does not result in the recovery of any marijuana. It should not require an article in *The New York Times* to call attention to such patently

disingenuous tactics, but has become necessary for a variety of reasons, including the NYPD's failure to correct such behavior, the willingness of prosecutors and judges to credit the lying officers and the increasing rate of occurrence.

71.     On April 24, 2019, *The New York Times* published an article, entitled "Detective's Lies Sent Three People to Prison, Prosecutors Charge," by Sean Piccolo, detailing the lies of NYPD Second Grade Detective Joseph Franco and how those lies resulted in the imprisonment of at least three innocent people. The article described how Det. Franco lied about observing drug transactions on at least three separate occasions, lies that were only uncovered through contradictory video evidence. Det. Franco's lies resulted in the innocent individuals each being sentenced to prison terms in excess of one-year.

72.     Other articles include: (i) "Testilying' by Police: A Stubborn Problem.," by Joseph Goldstein, *The New York Times*, March 18, 2018; (ii) "New York Detective Charged with Faking Lineup Results," by Joseph Goldstein, *The New York Times*, February 17, 2018; (iii) "He Excelled as a Detective, Until Prosecutors Stopped Believing Him," by Joseph Goldstein, *The New York Times*, October 17, 2017; (iv) "Review Board Notes Rise in New York Police Officers' False Statement," by J. David Goodman, *The New York Times*, May 14, 2015; (v) "In Brooklyn Gun Cases, Suspicion Turns to the Police," by Stephanie Clifford, *The New York Times*, December 11, 2014; (vi) "Detective is Found Guilty of Planting Drugs," by Tim Stelloh, *The New York Times*, November 1, 2011; and (vii) "The Drugs? They Came from the Police," by Jim Dwyer, *The New York Times*, October 13, 2011.

73.     The NYPD has a longstanding and ignominious record of failing to discipline its officers, or even entertaining allegations of wrongdoing against them. On June 26, 2019, *The New York Times* published an article, entitled "2,495 Reports of Police Bias. Not One Was Deemed Valid by

the N.Y.P.D." This article reported that within the last five (5) years, almost 2,500 separate individuals have filed formal complaints with the NYPD alleging that an officer acted with bias toward them, with not a single one being substantiated by the NYPD. Such a finding is plainly incredible and obviously the result of deliberately poor or nonexistent investigatory protocols. The report further impugned the NYPD's commitment to combat the prejudices and the biases exhibited by many of its officers.

74.     The NYPD, the City of New York, and their respective policymakers, officials or supervisors have imposed, tacitly approved or acquiesced to policies, customs, or patterns and practices within the NYPD that resulted in Plaintiff's arrest without probable cause.

75.     The NYPD, the City of New York, and their respective policymakers or supervisors have failed to provide adequate training regarding the identification of probable cause, reasonable suspicion or the appropriate amount of force to be used.

76.     Defendants' actions, which were perpetrated without even the semblance of probable cause, were so blatantly violative of plaintiff's civil rights that the tacit approval of identical or similar acts by the policymakers or supervisors of the NYPD and the City of New York, as well as their deliberate indifference towards the rights of any individuals who may come into contact with Defendants, should be inferred, because such flagrant deprivations of constitutionally protected rights could not, and would not, occur without the tacit approval or deliberate indifference regarding the commission of such violations by the policymakers or supervisors of the NYPD and City of New York.

77.     Further details and facts relating to the unlawful policies, customs or patterns and practices of the NYPD, City of New York and their respective policymakers, supervisors, police officers or

employees, will become known after the completion of discovery, as such information is presently within the exclusive possession of defendants.

78.     The personnel files, records and disciplinary histories of the individual defendants will reveal a history of Constitutional violations indicative of defendant City's knowledge that the individual officer Defendants were unfit for employment as NYPD officers, or for employment in general, and that the probability of the individually named defendants committing similar violations in the future was unreasonably high.

79.     Said personnel and disciplinary files, records and histories will conclusively show that the City and the NYPD were fully aware of defendants' past constitutional violations, the unacceptably high probability for the recurrence of similar transgressions, the unreasonably dangerous situations that were likely to result from said defendants' being hired or retained as NYPD officers, as well as their unsuitability for employment as law enforcement officers, or for employment in general, and that the NYPD and City of New York failed to engage in any preventive or corrective action intended to diminish the likelihood of recurrence for such violations, which is tantamount to the City's tacit approval of such misconduct or the City's deliberate indifference towards the civil rights of those who may interact with its employees, including defendants, Tegan, Rodriguez and Grove.

80.     Upon information and belief, the NYPD and City of New York and have failed, or outright refused, to correct the individually named defendants' predilections to engage in unconstitutional behavior or attempt to prevent the recurrence of such misconduct

81.     As a direct and proximate result of the aforementioned acts of the defendants, including the City, Tegan, Rodriguez and Grove, which resulted in violations of his civil rights, under the Fourth, Sixth and Fourteenth Amendments to the United States Constitution, New York State law,

plaintiff suffered the following injuries and damages: loss of liberty, physical injury, physical pain and suffering, emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety, and irreparable harm to his reputation.

## FIRST CAUSE OF ACTION
Unlawful Search & Seizure Under
New York State Law

82.     The above paragraphs are here incorporated by reference, as though fully set forth herein.

83.     Defendants subjected plaintiff and his property to unreasonable searches and seizures without a valid warrant and without reasonable suspicion or probable cause do so.

84.     Plaintiff was conscious and fully aware of the unreasonable searches and seizures to his person and property.

85.     Plaintiff did not consent to the unreasonable searches and seizures to his person or property.

86.     The unreasonable searches and seizures to plaintiff's person and property were not otherwise privileged.

87.     Accordingly, defendants violated plaintiff's right to be free from unreasonable searches and seizures, pursuant to Article I, Section 12, of the New York State Constitution and Article II, Section 8, of the New York Civil Rights Law.

88.     Defendant City of New York, as employer of the individual Defendants, is responsible for their wrongdoings under the doctrine of *respondeat superior*.

89.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SECOND CAUSE OF ACTION
Unlawful Search & Seizure Under
42 U.S.C. § 1983 Against Individual Defendants

90.     The above paragraphs are here incorporated by reference, as though fully set forth herein.

91.     Defendants subjected plaintiff and his property to unreasonable searches and seizures without a valid warrant and without reasonable suspicion or probable cause do so.

92.     Plaintiff was conscious and fully aware of the unreasonable searches and seizures to his person and property.

93.     Plaintiff did not consent to the unreasonable searches and seizures to his person or property.

94.     The unreasonable searches and seizures to plaintiff's person and property were not otherwise privileged.

95.     Accordingly, defendants violated plaintiff's right to be free from unreasonable searches and seizures, pursuant to the Fourth Amendment to the United States Constitution.

96.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### THIRD CAUSE OF ACTION
False Arrest & False Imprisonment Under
New York State Law

97.     The above paragraphs are here incorporated by reference as though fully set forth herein.

98.     Defendants subjected Plaintiff to false arrest, false imprisonment, and deprivation of liberty without a valid warrant or probable cause.

99.     Plaintiff was conscious of his confinement.

100.    Plaintiff did not consent to his confinement.

101.    Plaintiff's arrest and false imprisonment was not otherwise privileged.

102.    Defendant City of New York, as employer of the individual Defendants, is responsible for their wrongdoings under the doctrine of *respondeat superior*.

103.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FOURTH CAUSE OF ACTION
False Arrest & False Imprisonment Under
42 U.S.C. § 1983 Against Individual Defendants

104.    The above paragraphs are here incorporated by reference, as though fully set forth herein.

105.    The Defendants violated the Fourth and Fourteenth Amendments to the U.S. Constitution by wrongfully and illegally arresting, detaining and imprisoning Plaintiff.

106.    The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of Plaintiff was carried out without a valid warrant, without Plaintiff's consent, and without probable cause or reasonable suspicion.

107.    At all relevant times, Defendants acted forcibly in apprehending, arresting, and imprisoning Plaintiff.

108.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FIFTH CAUSE OF ACTION
Deprivation of Rights & Denial of Equal Protection of the Laws under
New York State law

109.    The above paragraphs are here incorporated by reference, as though fully set forth herein.

110.    Plaintiff, as male of Hispanic or Latino descent, national origin or ethnicity, is a member of a racial or ethnic minority and protected class.

111.    Defendants discriminated against Plaintiff on the basis of his race, color, ethnicity, national origin, ancestry, sex, gender, religion, religious practice, age, disability or sexual orientation.

112.    Defendants also engaged in the selective treatment of Plaintiff, in comparison to others similarly situated.

113.    Defendants' discriminatory treatment of Plaintiff was based on impermissible considerations, such as race, color, national origin, ethnicity, sex, gender, sexual orientation or religion; or an intent to inhibit or punish Plaintiff for the exertion of his Constitutional rights; or a malicious or bad faith

intent to injure Plaintiff.

114.    Defendants applied facially neutral laws against Plaintiff in a discriminatory manner.

115.    Defendants, motivated by discriminatory animus, applied facially neutral statutes with adverse effects against Plaintiff.

116.    Defendants did not possess a rational basis, excuse or justification for applying any laws or statutes against Plaintiff.

117.    Accordingly, defendants violated plaintiff's rights, pursuant to Article I, Section 11, of the New York State Constitution, Article VII, Section 79-N, of the New York Civil Rights Law and Section 296, Paragraph 13, of the New York Human Rights Law.

118.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

119.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SIXTH CAUSE OF ACTION
Deprivation of Rights & Denial of Equal Protection of the Laws under
42 U.S.C. §§ 1981 & 1983 Against Individual Defendants

120.    The above paragraphs are here incorporated by reference, as though fully set forth herein.

121.    Plaintiff, as male of Hispanic or Latino descent, national origin or ethnicity, is a member of a racial or ethnic minority and protected class.

122.    Defendants discriminated against Plaintiff on the basis of his race, color, national origin, ethnicity, sex, gender sexual orientation or religion.

123.    Defendants engaged in the selective treatment of Plaintiff in comparison to others similarly situated.

124.    Defendants' selective treatment of Plaintiff was based on impermissible considerations, such

as race, color, ethnicity, national origin, sex, gender, sexual orientation or religion; or an intent to inhibit or punish Plaintiff for the exertion of his Constitutional rights; or malicious or bad faith intent to injure Plaintiff.

125.    Defendants applied facially neutral laws against Plaintiff in a discriminatory manner.

126.    Defendants, motivated by a discriminatory animus, applied facially neutral penal statutes with adverse effects against Plaintiff.

127.    Defendants did not possess a rational or compelling basis, excuse or justification for applying any laws or statutes against Plaintiff.

128.    Accordingly, defendants deprived plaintiff of his entitlement to equal protection of the law and violated his rights, pursuant to the Fourteenth Amendment to the United States Constitution.

129.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SEVENTH CAUSE OF ACTION
Failure to Intervene Under
New York State Law

130.    The above paragraphs are here incorporated by reference, as though fully set forth herein.

131.    Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct, observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct, and failed to intervene.

132.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

133.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## EIGHTH CAUSE OF ACTION
Failure to Intervene Under
42 U.S.C. § 1983 Against Individual Defendants

134.    The above paragraphs are here incorporated by reference, as though fully set forth herein.

135.    Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct, and failed to intervene.

136.    Accordingly, the Defendants who failed to intervene violated the First, Fourth, Sixth and Fourteenth Amendments.

137.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants, jointly and severally, as follows:

a)    In favor of Plaintiff in an amount to be determined by a jury for each of Plaintiff's causes of action;

b)    Awarding Plaintiff punitive damages in an amount to be determined by a jury;

c)    Awarding Plaintiff compensatory damages in an amount to be determined by a jury;

d)    Awarding Plaintiff reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988, the New York City Administrative Code and the New York Civil and Human Rights Laws; and

e)    Granting such other and further relief, as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated: Bayside, New York

August 11, 2022

Respectfully submitted,

/s/ *Ataur Raquib*
Ataur Raquib, Esq.
Sim & DePaola, LLP
*Attorneys for Mr. Feliz*
4240 Bell Blvd – Ste 405
Bayside, NY 11361
T: (718) 281-0400
F: (718) 631-2700
araquib@simdepaola.com