UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                               :

  ROBINSON FELIZ,                                           :

                                               :

                          Plaintiff,          :          19cv6305 (DLC)

                                               :

                     -v-                        :          OPINION AND
                                               :                  ORDER

  CITY OF NEW YORK, et al.,                                 :

                                               :

                         Defendants.          :

                                               :
---------------------------------------- X

APPEARANCES:

For plaintiff Robinson Feliz:
Ataur Raquib
Sim & DePaola, LLP
42-40 Bell Boulevard
Suite 405
Bayside, NY 11361

For defendants City of New York, Alex Tegan, Ronnie Rodriguez,
and Michael Grove:
Carolyn Kay Depoian, Assistant Corporation Counsel
Corporation Counsel of the City of New York
100 Church Street
New York, NY 10007

DENISE COTE, District Judge:

    This action arises out of a traffic stop of Robinson Feliz.

Feliz brings various civil rights claims against three police

officers and the City of New York (the "City").  The defendants

have moved for summary judgment.  For the following reasons, the

motion is largely granted.

## Background

The following facts are taken from the evidence submitted in connection with the instant motion.  The facts are undisputed or are taken in the light most favorable to the plaintiff unless otherwise indicated.

On May 15, 2018, Feliz was driving home in New York City. Police Officers Michael Grove and Alex Tegan were parked in a marked police vehicle near the intersection of 165th Street and Fort Washington Avenue in Manhattan, about twenty feet from the traffic light controlling the intersection.

At approximately 9:49 p.m., Feliz approached the intersection on 165th Street and made a right turn onto Fort Washington Avenue.  According to Feliz, when he turned right onto Fort Washington Avenue, the traffic light that he faced was yellow.  According to the police officers, the traffic light had turned red prior to Feliz's turn.

After observing the turn, the officers activated their body cameras and the police car's sirens and lights and followed Feliz's vehicle on Fort Washington Avenue.  Feliz pulled over on 164th Street.

The officers approach Feliz's car, and Grove asked him for his driver's license and vehicle registration.  Feliz produced his driver's license.  Feliz told Grove that he did not have a

copy of his vehicle's certificate of registration, but the vehicle had an inspection sticker on the windshield.  Grove then asked Feliz if he knew that it was illegal to make a right turn on a red light in New York City.  Feliz responded that he "kn[ew] it was yellow" but that he "didn't realize it had changed to red."

Grove and Tegan returned to the police vehicle and entered Feliz's driver's license information into a police database, which indicated that Feliz's license was suspended.  After seeing that the database reported Feliz's license as suspended, Grove and Tegan returned to Feliz's vehicle and asked him to step out of the car.  They asked him if he knew of any problems with his license or any unpaid tickets.  Feliz responded "no," and that he always pays any tickets he receives.  Feliz noted that there was one ticket that he did not pay on time, but that "they made me send a hundred dollars with a form," and he "could show [the officers] the form right now."  The officers did not allow Feliz to retrieve the form.  While Feliz spoke with Grove, Tegan conducted a quick pat down of Feliz at the back of Feliz's vehicle.

Grove and Tegan then took Feliz to the 33rd precinct.  When the three men arrived at the precinct, they approached Officer Ronnie Rodriguez, who was working behind the front desk.  Tegan

completed some paperwork, and Grove conducted another pat down of Feliz.  After completing the paperwork, Grove and Tegan escorted Feliz to a holding cell and turned off their body cameras.

Feliz filed this action on July 8, 2019.  On August 7, 2020, the defendants filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  In lieu of opposing the motion, the plaintiff filed an amended complaint on September 24 asserting nineteen causes of action under federal law and New York state and city law.

On October 30, the defendants filed a motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6).  The motion to dismiss the amended complaint was granted in part on February 14, 2022.  Feliz v. City of New York, No. 19-cv-6305 (AJN), 2022 WL 446043, at *14 (S.D.N.Y. Feb. 14, 2022). Following that decision, eight claims remained, at least in part, against all defendants: unreasonable search and seizure under New York state and federal law to the extent that the claims were based on a search of Feliz incident to his arrest, false arrest and imprisonment under New York state and federal law, denial of equal protection under New York state and federal law, and failure to intervene under New York state and federal law.

On April 6, 2022, the case was reassigned to the Hon.
Vernon S. Broderick.  On August 17, it was reassigned to this
Court.  Discovery concluded on September 19.

The defendants filed their motion for summary judgment on
December 20.  The motion was fully submitted on February 3,
2023.

## Discussion

Summary judgment may be granted only when "the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a).  "To present a genuine issue of material fact
sufficient to defeat a motion for summary judgment, the record
must contain contradictory evidence such that a reasonable jury
could return a verdict for the nonmoving party."  Horror Inc. v.
Miller, 15 F.4th 232, 241 (2d Cir. 2021) (citation omitted).  In
considering a motion for summary judgment, a court "construe[s]
the facts in the light most favorable to the non-moving party
and must resolve all ambiguities and draw all reasonable
inferences against the movant."  Kee v. City of New York, 12
F.4th 150, 158 (2d Cir. 2021) (citation omitted).

I.   False Arrest

A false arrest claim under either federal or New York law
requires a plaintiff to prove that "(1) the defendant intended

to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."  Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012) (citation omitted).  "To avoid liability for a claim of false arrest, an arresting officer may demonstrate that either (1) he had probable cause for the arrest, or (2) he is protected from liability because he has qualified immunity." Simpson v. City of New York, 793 F.3d 259, 265 (2d Cir. 2015).

Probable cause "is a complete defense to an action for false arrest brought under New York law or § 1983."  Ackerson, 702 F.3d at 19 (citation omitted).

> Probable cause to arrest a person exists if the law
> enforcement official, on the basis of the totality of
> the circumstances, has sufficient knowledge or
> reasonably trustworthy information to justify a person
> of reasonable caution in believing that an offense has
> been or is being committed by the person to be
> arrested.

United States v. Hawkins, 37 F.4th 854, 858 (2d Cir. 2022) (citation omitted).  An arrest is not an unreasonable search or seizure "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence."  Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001).  Further, "it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any

charge actually invoked by the arresting officer at the time of the arrest." Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006); see also Devenpeck v. Alford, 543 U.S. 146, 153 (2004).

The motion for summary judgment on the false arrest claims is denied.  The officers stopped the plaintiff because he purportedly made an illegal right turn on a red light.  The plaintiff, however, disputes that the light was red when he turned.  Thus, a factual disagreement exists that is material in determining whether the initial stop of the plaintiff's vehicle was lawful.

Nonetheless, the defendants are entitled to summary judgment on one issue, namely, whether the police officers had probable cause to arrest Feliz after he failed to produce his vehicle registration.  New York's Vehicle and Traffic Law ("VTL") § 401(4) provides that any

> police officer may request that the operator of any
> motor vehicle produce for inspection the certificate
> of registration for such vehicle and such operator
> shall furnish to such . . . police officer any
> information necessary for the identification of such
> vehicle and its owner . . . .

Thus, New York law "requires that a motorist produce, upon a demand of a police officer, the automobile registration." Tompkins v. City of New York, 50 F. Supp. 3d 426, 433 (S.D.N.Y. 2014) (citation omitted) (collecting cases).  Accordingly, the

"[f]ailure to provide registration is a traffic violation."  Id.

at 433-34 (citation omitted) (collecting cases).

When Feliz admitted that he did not have his vehicle

registration, the officers had probable cause to believe that he

was in violation of VTL § 401(4).[1]  Probable cause of that

violation is sufficient to justify the plaintiff's arrest.[2]

Finally, it is worth noting that, even assuming that the

plaintiff successfully persuades a jury that he did not make an

illegal turn and that the initial stop of his vehicle was

---

[1] Plaintiff notes in his response to the defendants' statement of
undisputed facts that he had an inspection sticker on his
vehicle's windshield.  But he cites no authority suggesting that
an individual who fails to provide a copy of the "certificate of
registration" upon on officer's request is not in violation of
VTL § 401(4) merely because there is an inspection sticker on
the windshield.

[2] Because there was probable cause to arrest the plaintiff based
on his failure to produce the vehicle registration, it is
unnecessary to decide whether there was also probable cause for
the arrest based on the police database's indication that
Feliz's license was suspended.  Notably, however, courts have
held that officers have probable cause to arrest if a check of a
driver's license in a police database shows the license is
suspended, as long as the officer "did not know or have reason
to know that the information in the database was false or
unreliable."  See, e.g., Hughes v. McWilliams, No. 04-CV-7030
(KMW), 2009 WL 4823940, at *3 (S.D.N.Y. Dec. 15, 2009).
Although plaintiff suggests that he attempted to present
exculpatory evidence showing that the suspension was invalid, he
never indicated to the arresting officers that he had proof that
his license was not suspended.  Instead, he merely told the
officers that he had to "send a hundred dollars" to resolve an
outstanding ticket and that he "had a form" that he could show
them.

therefore unlawful, "[t]he lack of probable cause to stop and search does not vitiate the probable cause to arrest." Townes v. City of New York, 176 F.3d 138, 149 (2d Cir. 1999). Because defendants had probable cause to arrest the plaintiff once he admitted that he did not have his vehicle registration, it appears that the plaintiff can, at most, receive damages for an injury sustained in the time from his initial stop until he revealed that he did not have his registration. See id. From the body camera footage, this represents a period of roughly one minute.[3]

II.  Unreasonable Search and Seizure

New York state and federal law each protect individuals against "unreasonable searches and seizures." U.S. Const. amend. IV; N.Y. Const. art. I, § 12. Probable cause for an arrest defeats a claim for unreasonable search and seizure under both federal and New York state law. Fabrikant v. French, 691 F.3d 193, 215-16 (2d Cir. 2012) (federal law); Ortiz v. City of New York, 157 N.Y.S.3d 412, 412-13 (1st Dep't 2021) (state law).

The defendants' motion for summary judgment on the unreasonable search and seizure claims is granted. In a prior

---

[3] Moreover, it is not even clear whether the vehicle stop constitutes an arrest under the relevant standards. Because the parties have not meaningfully addressed this issue, however, it is not addressed in this Opinion.

opinion in this litigation, the unreasonable search and seizure

claims were dismissed except to the extent that they were based

on the search of Feliz incident to his arrest.  Feliz, 2022 WL

446043, at *7.  As explained above, although there is a factual

dispute regarding whether the initial stop was lawful, the

defendants have shown that there was probable cause for the

arrest.  As a result, the officers were entitled to conduct a

reasonable search incident to the arrest.  There is no

contention that the search that occurred outside of Feliz's

vehicle was overly intrusive or conducted improperly.

Accordingly, the defendants are entitled to summary judgment on

the unreasonable search and seizure claims.

In the plaintiff's opposition to the motion, he mentions

for the first time that he was strip searched twice while in

police custody.  To the extent plaintiff attempts to present a

new theory of unreasonable search and seizure based on these

searches, the attempt fails.  There is no reference to a strip

search in plaintiff's complaint, and the plaintiff may not now

constructively amend the complaint to add a new theory.  See

Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998)

(plaintiff may not amend complaint in brief opposing dispositive

motion).

Moreover, the plaintiff does not provide any evidence that any of the defendants in the case were involved in these searches.  In his deposition in this action, Feliz mentioned being strip searched at the precinct after Grove and Tegan took him to the holding cell and again after he was transported to another precinct.  The plaintiff has also failed to present any factual details surrounding the purported searches, or any argument for why these particular searches were unlawful.  The Supreme Court has held that at least some kinds of strip searches of arrestees may be permissible, even for individuals arrested for minor offenses.  See Florence v. Bd. of Chosen Freeholders, 566 U.S. 318, 322-23, 334-38 (2012).  Accordingly, plaintiff's new reference to the two strip searches is insufficient to salvage the unreasonable search and seizure claims.

III. Failure to Intervene

The motion for summary judgment on the failure to intervene claims is denied.  A defendant may be liable for failing to intervene when his or her failure to act permitted others "to violate clearly established statutory or constitutional rights of which a reasonable person would have known," Berg v. Kelly, 897 F.3d 99, 113 (2d Cir. 2018) (citation omitted), provided that he or she observes the violation and has a reasonable

opportunity to prevent it.  See Figueroa v. Mazza, 825 F.3d 89,

106 (2d Cir. 2016).  "Liability attaches on the theory that the

officer, by failing to intervene, becomes a tacit collaborator

in the illegality."  Id. (citation omitted).

As explained above, a factual dispute exists over whether

the initial stop of the vehicle was justified.  Accordingly, the

failure to intervene claims survive to the extent that they are

based on the initial stop of Feliz's vehicle.  For the reasons

identified above, however, the plaintiff cannot receive damages

for any events after he admitted that he did not have his

certificate of registration because there was probable cause

justifying his arrest at that point, and the defendants are

granted summary judgment on the failure to intervene claims to

the extent they address any period beyond the initial stop.

IV.  Equal Protection

The motion for summary judgment on the equal protection

claims is granted.  The plaintiff concedes in his opposition

that he "does not oppose" the motion "with respect to his claims

for equal protection."  Accordingly, the plaintiff has abandoned

these claims.  See Kovaco v. Rockbestos-Surprenant Cable Corp.,

834 F.3d 128, 143 (2d Cir. 2016).

V.   Claims Against Rodriguez

Finally, the motion for summary judgment on all the claims against Rodriguez is granted.  Rodriguez was not involved in the initial stop of plaintiff, which is the only portion of the events that may be actionable.  Moreover, to the extent that the plaintiff argues that Rodriguez should be liable for failing to conduct an independent review of the propriety of plaintiff's arrest, the argument fails because Rodriguez was entitled to rely on the information provided to him by Grove and Tegan.  See Brown v. City of New York, 798 F.3d 94, 99 (2d Cir. 2015). Accordingly, Rodriguez is entitled to summary judgment on all the claims against him.

## Conclusion

The defendants' December 20, 2022 motion is granted in part.  Specifically, the defendants are entitled to summary judgment on the plaintiff's unreasonable search and seizure and equal protection claims.  Defendant Rodriguez is entitled to summary judgment on all claims against him.  The plaintiff's false arrest and failure to intervene claims survive to the extent they are based on the roughly one minute of time between the traffic stop and his admission that he could not produce his

vehicle registration.


Dated:     New York, New York
           March 22, 2023


                                    _____
                                         DENISE COTE
                               United States District Judge


14